UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN STATE A. PHILIP RANDOLPH INSTITUTE, MARY LANSDOWN, ERIN COMARTIN, DION WILLIAMS and COMMON CAUSE,

Plaintiffs,

v.

RUTH JOHNSON, in her official capacity as Michigan Secretary of State,

Defendant.

Case No. 16-cv-11844

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MONA K. MAJZOUB

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT [46]**

## I. Introduction

Plaintiffs seek leave to file a second amended complaint. The proposed complaint adds an intentional discrimination claim under the Fourteenth Amendment and a First Amendment claim. The Defendant argues against amendment—that the intentional discrimination claim is redundant and that Plaintiffs fail to state a cognizable First Amendment claim. For the reasons that follow, the Court will **GRANT** Plaintiffs' Motion for Leave to File a Second Amended Complaint **IN PART** and **DENY** Plaintiffs' Motion **IN PART**.

-1-

## II. Relevant Facts and Procedural History

Mary Lansdown, Erin Comartin, Dion Williams, and the Michigan State A. Philip Randolph Institute ("Plaintiffs") commenced this action against the Michigan Secretary of State, Ruth Johnson ("Defendant") on May 24, 2016. *See* Dkt. No. 1. Plaintiffs filed an Amended Complaint on June 1, 2016. Dkt. No. 9.[1]

Plaintiffs allege that the passage of Public Act 268 ("P.A. 268") impermissibly burdens the right to vote. On July 22, 2016, this Court issued a preliminary injunction preventing the enforcement of P.A. 268. Dkt. No. 25. Defendant appealed and filed an emergency motion to stay the preliminary injunction. Dkt. Nos. 27–29. On August 17, 2016, the Sixth Circuit denied the Defendant's emergency motion for a stay pending appeal. *Michigan State A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656, 659 (6th Cir. 2016). On September 19, 2016, the Sixth Circuit granted the Defendant's motion to voluntarily dismiss the appeal. Dkt. No. 45.

On November 14, 2016, the Plaintiffs filed a Motion for Leave to File a Second Amended Complaint. Dkt. No. 46. On November 15, 2016, the Defendant

---

[1] Plaintiffs inadvertently filed the Amended Complaint as an Answer. Nevertheless because Plaintiffs filed within 21 days of commencing the action, the Court granted the amendment. *See* FED. R. CIV. P. 15(a)(1)(A); *Michigan State A. Philip Randolph Inst. v. Johnson*, No. 16-CV-11844, 2016 WL 3922355, Fn. 1 (E.D. Mich. July 21, 2016).

filed an answer to the First Amended Complaint. Dkt. No. 47. The Defendant opposes the proposed Second Amended Complaint.

The First Amended Complaint alleges that the passage of P.A. 268 unlawfully burdens the right to vote according to the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, the Voting Rights Act (52 U.S.C. § 10301), and the Americans with Disabilities Act (42 U.S.C. § 12132). The proposed Second Amended Complaint makes three major changes to the first Amended Complaint. First, the proposed complaint adds an intentional discrimination claim under the Fourteenth Amendment of the U.S. Constitution. Second, the Plaintiffs add a First Amendment violation. Third, the proposed complaint removes the Americans with Disabilities Act claim.

### III. Standard for Amending Pleadings

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "[D]istrict courts have discretion to permit or deny amendment after a defendant files an answer to a plaintiff's complaint." *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 439 (6th Cir. 2016). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft v.*

*Seward*, 689 F.2d 637, 639 (6th Cir. 1982) (citing *Conley v. Gibson*, 355 U.S. 41, 48 (1957)).

Despite this liberal amendment policy, denial may be appropriate when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir. 2016) (quoting *Foman v. Davis*, 371 U.S. 178 (1962)). Additionally, "[a] proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

In this case, the Defendant does not argue that the proposed Second Amended Complaint is premised on bad faith or undue delay. Therefore, the Court's analysis will focus on whether the proposed Complaint can survive the motion to dismiss standard articulated in Rule 12(b)(6).

### IV. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 555–56 (2007). To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations and quotations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Id.* Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555).

## V. Analysis

The proposed Second Amended Complaint makes three changes from the previous complaint. First, it deletes the Americans with Disabilities Act claim. In this Court's Amended Opinion and Order Granting Plaintiffs' Motion for Preliminary Injunction, the Court concluded, "it does not appear likely that Plaintiffs have standing for their [American with Disabilities Act] claims." Dkt. No. 25, p. 15 (Pg. ID 720). Accordingly, the Plaintiffs eliminated this claim. The Defendant does not oppose deleting the American with Disabilities Act claim. Subsequently, the

Court's analysis focuses on whether the added intentional discrimination claim and First Amendment claim can meet the Rule 12(b)(6) threshold.

    *A. Intentional Discrimination under the Fourteenth Amendment*

The original Complaint included an Equal Protection claim that alleges, "[t]he abolition of straight party voting will disproportionately burden the fundamental right to vote of African American voters". Dkt. No. 9, ¶ 69 (Pg. ID 415). The proposed Second Amended Complaint adds a second Equal Protection claim that alleges, "[b]oth the discriminatory effect of PA 268, and the history of its passage demonstrate that the statute was passed with the intent to discriminate against African-American voters." Dkt. No. 46-1, ¶ 85 (Pg. ID 1001). The Defendant argues that the additional Equal Protection claim must be dismissed because it is redundant. The Court disagrees.

Although the precise contours of the Fourteenth Amendment are not always clear, the Sixth Circuit confirms that there are multiple paths to relief through the Equal Protection Clause. In *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016), the Sixth Circuit analyzed two Ohio voting statutes. The statutes required election officials to reject absentee ballots if the address or birthdate did not perfectly match voting records, *inter alia*. *Id.* at 619. On appeal, the Sixth Circuit considered three separate equal-protection inquiries: "[w]hether the challenged provisions (1) unduly burden[ed] the right to vote; (2) result[ed] in a lack

of uniform standards; and (3) were enacted with a discriminatory purpose." *Id.* at 630.

In its opinion, the Sixth Circuit demonstrates that multiple Equal Protection claims can co-exist within the same cause of action. First, the Sixth Circuit discussed whether the Ohio statute unduly burdened the right to vote. *Id.* The Sixth Circuit's analysis reveals that there is a species of the Equal Protection Clause that applies only when the fundamental right to vote is allegedly infringed. *Id.* (applying the *Anderson-Burdick* balancing test to determine whether the Ohio statutes placed an undue burden on voting); *see also Obama for America v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (applying the *Anderson-Burdick* balancing test to determine if an Ohio statute unduly burdened non-military voters).

The *Anderson-Burdick* balancing test requires courts to weigh the severity of the asserted burden against the state's justification for the burden. *See Ne. Ohio Coal. for the Homeless* 837 F.3d at 630 (6th Cir. 2016) ("A court . . . must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.") (internal quotations omitted). When applying the *Anderson-Burdick* test, "the level of scrutiny into a challenged election law varies

based on the severity of its constraint on voting rights." *Id.* at 631. "[S]evere restriction[s]" must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 289 (1992). On the other hand, "important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Ne. Ohio Coal. for the Homeless*, 837 F.3d at 630. Therefore, the *Anderson-Burdick* balancing test focuses on the burden on individual voters. In weighing the burden against the state's justifications, discrimination is a factor to consider when determining the level of scrutiny.

In addition to the *Anderson-Burdick* test, the Sixth Circuit's opinion in *Northeast Ohio Coalition for the Homeless* demonstrates that the traditional Equal Protection framework also remains available in voting and election cases. *Id.* (applying *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) to determine whether the Ohio legislature intentionally discriminated against voters). "In *Arlington Heights*, the Supreme Court articulated nonexhaustive evidentiary factors to consider in determining whether official action was undertaken with a discriminatory purpose." *Ne. Ohio Coal. for the Homeless*, 837 F.3d at 636.

Although discrimination can play a role in both the *Anderson-Burdick* test and the *Arlington Heights* analysis, the two frameworks have different focuses. *Anderson-Burdick* focus on the burden on individual voters, while *Arlington Heights* focuses on the intent of the legislature. *Northeast Ohio Coalition for the Homeless*

proves not only that both analyses are distinct, but also that the two paths for relief remain concurrently available in voting cases. This Court must follow that example.

In this case, Count I of the proposed Complaint invokes the "fundamental right to vote" while alluding to the *Anderson-Burdick* standard. Count IV mentions "discriminatory effect" and cites to the *Village of Arlington Heights*. Dkt. No. 46-1, ¶ 84 (Pg. ID 1001). Precedent demonstrates that both paths are distinct and not redundant. Thus, Plaintiffs' added intentional discrimination claim is cognizable.

   B. *First Amendment*

The First Amendment, which applies to the States through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend. I. "Standards to evaluate justifications by the state of a restriction on speech turn, *inter alia*, on whether the restriction focuses on content, that is, if it applies to 'particular speech because of the topic discussed or the idea or message expressed.' " *Rideout v. Gardner*, 838 F.3d 65, 71 (1st Cir. 2016) (quoting *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015)). "Content-based regulations are subject to strict scrutiny, which requires the government to demonstrate 'a compelling interest and . . . narrow[] tailor[ing] to achieve that interest.' " *Id.* "Content-neutral restrictions are subject to intermediate scrutiny, which demands that the law be 'narrowly tailored to serve a significant governmental interest.' " *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

"When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 828–29 (1995). "Viewpoint discrimination is thus an egregious form of content discrimination." *Id.* "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.*

As best as the Court can tell, the proposed Complaint seems to allege viewpoint discrimination against the Defendant. *See* Dkt. No. 46-1, ¶ 100 (Pg. ID 1004) ("PA 268 violates the First Amendment because it was enacted by the Republican dominated Legislature, and signed by the Republican Governor, for the purpose of abridging the freedoms of speech and association of Michigan voters, whose political viewpoint, expressed in their disproportionate casting of straight party votes for the Democratic Party differed from theirs."). Even assuming the non-conclusory allegations to be true, these allegations do not allege the type of egregious, content-based discrimination required for viewpoint discrimination. Instead, Plaintiffs seem to restate an intentional discrimination claim under a First Amendment heading.

The Plaintiffs argue that the "very expression of identification with a particular party and its values is an exercise of speech protected by the First

-10-

Amendment." Dkt. No. 52, p. 8 (Pg. ID 1069). However, the Plaintiffs fail to cite a single relevant authority to support this argument.

The Plaintiffs' Motion is only three sentences and fails to mention the First Amendment claim. In their Reply, Plaintiffs cite *Foman v. Davis*, 371 U.S. 178 (1962), which speaks to whether an opposing party is prejudiced by an amended complaint. Dkt. No. 52, p. 8 (Pg. ID 1069). Prejudice, however, is irrelevant here because the Defendant does not argue that point. Dkt. No. 50, pp. 12–13 (Pg. ID 1048–49). The issue is whether the Plaintiffs stated a cognizable First Amendment claim pursuant to Rule 12(b)(6).

Last, the Plaintiffs quote an excerpt from this Court's Opinion and Order Granting the Plaintiffs' Preliminary Injunction—but this is also insufficient. Reciting the Court's words does not create a First Amendment cause of action, nor does it obviate the Plaintiffs' obligation to provide relevant, legal justification to survive dismissal.

At this stage—only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). However, *Twombly* requires this Court to reject conclusory labels and formulaic recitations of elements. *Id.* In this case, the Plaintiffs' First Amendment claim is conclusory because it attempts to restate an intentional discrimination claim disguised with formulaic recitations of free speech elements.

-11-

Plaintiffs' Complaint, briefing and arguments simply do not state a First Amendment claim that raises a right to relief above a speculative level. Thus, the First Amendment claim is futile because it does not survive Rule 12(b)(6).

## VII. Conclusion

After considering the amendment policy and the pleading standards articulated in the Federal Rules of Civil Procedure, Plaintiffs' Motion for Leave to File a Second Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**. The Amended Complaint will include an intentional discrimination claim under the Fourteenth Amendment. However, Plaintiffs' proposed First Amendment claim is barred.

**SO ORDERED.**

Dated: January 17, 2017

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 17, 2017, by electronic and/or ordinary mail.

/s/Tanya Bankston
Case Manager, (313) 234-5213