UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MICHIGAN STATE A. PHILIP RANDOLPH INSTITUTE, MARY LANSDOWN, ERIN COMARTIN, DION WILLIAMS, and COMMON CAUSE,**

        Plaintiffs,                    CIVIL ACTION NO. 16-cv-11844

        v.                                  DISTRICT JUDGE GERSHWIN A. DRAIN

**RUTH A. JOHNSON,**              MAGISTRATE JUDGE MONA K. MAJZOUB

        Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART NON-PARTIES LISA POSTHUMUS LYONS, MICHAEL MCCREADY, MARTY KNOLLENBERG, DAVID ROBERTSON, AND ARLAN MEEKHOF'S MOTIONS TO QUASH SUBPOENA [64], [68], [71], AND [78]

This matter comes before the Court on four motions to quash Plaintiffs' subpoenas directed to non-party former and current Michigan state legislators: (1) Non-party Lisa Posthumus Lyons' Motion to Quash Subpoena (docket no. 64); (2) Non-party Michael McCready's Motion to Quash Subpoena (docket no. 68); (3) Non-parties Marty Knollenberg and David Robertson's Motion to Quash Subpoena and for Protective Order (docket no. 71); and (4) Non-party Senator Arlan Meekhof's Motion to Quash Plaintiffs' Subpoena (docket no. 78).[1] Plaintiffs and Defendant Ruth A. Johnson, Michigan's Secretary of State, responded to the Motions (docket nos. 72, 83, 88, 90-94), to which Responses the legislators replied (docket nos.

---

[1] Representative Lisa Posthumus Lyons was a member of Michigan's House of Representatives from 2011 to 2017; Representative Michael McCready has served in Michigan's House of Representatives since 2013; Senators Marty Knollenberg and David Robertson have been members of Michigan's Senate since 2012 and 2010, respectively; and Senator Arlan Meekhof is the Michigan Senate Majority Leader. (Docket no. 64 at 6; docket no. 68 at 7; docket no. 71 at 8; docket no. 78 at 2.)

95-97). The Motions have been referred to the undersigned for consideration. (Docket nos. 65, 69, 75, 79.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

I.     BACKGROUND

This case concerns Plaintiffs' constitutional challenges to Michigan Senate Bill 0013, enrolled as 2015 Public Act 268 (2015 P.A. 268), which eliminated the straight-party voting option on Michigan's ballots. The following is the Bill's legislative history as presented by Plaintiffs in their Response to the instant Motions:

> Senate Bill 13 (SB 13) . . . was sponsored by Senator Marty Knollenberg, introduced in the Michigan Senate on January 20, 2015, and referred to the Committee on Elections and Government Reform, headed by Senator David Robertson. No action was taken on the bill until November 10, 2015, when it was voted out of committee, with no hearing, and passed that same day, all Republicans voting in favor and all Democrats voting against.
>
> The House Committee on Elections, headed by State Senator Lisa Posthumus Lyons, considered SB 13 on December 1 and 8, 2015, and the House passed it on December 9, 2015, tie-barring it to legislation allowing secure no-reason absentee voting, and sending it back to the Senate. On December 16, 2015, the Senate, on motion of Senate Majority Leader Arlan Meekhof, voted to break the tie-bar to the bill allowing no-reason absentee voting. The House concurred in the Senate's amendment and the bill was given immediate effect. It was sent to Governor Snyder, who signed it on January 5, 2016, and enrolled as 2015 PA 268.

(Docket no. 88 at 8-9.)

Plaintiffs initiated this action on May 24, 2016, alleging that 2015 P.A. 268 is unconstitutional. (Docket no. 1.) Specifically, in their Second Amended Complaint for Declaratory and Injunctive Relief, Plaintiffs claim that (1) 2015 P.A. 268's abolition of straight-party voting will burden the fundamental right to vote of all Michigan voters and disproportionately burden the fundamental voting rights of African-American voters in violation

of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (2) 2015 P.A. 268 was passed with the intent to discriminate against African-American voters in violation of the Equal Protection Clause of the Fourteenth Amendment; and (3) 2015 P.A. 268's abolition of straight-party voting violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a) by diluting African-American voting strength and denying African Americans their fundamental right to vote. (Docket no. 56.)

As part of their discovery efforts in this matter, Plaintiffs served substantially similar subpoenas *duces tecum* upon Representatives Lyons and McCready and Senators Knollenberg, Robertson, and Meekhof, which commanded them to appear for and testify at a deposition and to bring with them the following documents:

> All records of all communications made by you or at your direction, whether written, typed, electronic, or recorded in any other fashion, relating in any way to the introduction, consideration, or passage by the Michigan Senate and House of Representatives of Senate Bill 0013 of 2015, enrolled as 2015 PA 268, the bill eliminating straight party voting, including, but not limited to, all calendar entries regarding any and all meetings where said bill was discussed, the dates and locations of such meetings, the names and titles of all persons present at said meetings, and all records of the discussions at said meetings.

(Docket no. 64 at 21-22, docket no. 68-1; docket no. 71-2; docket no. 71-3; docket no. 78-1.) The non-party state legislators' Motions to Quash Plaintiffs' Subpoenas are currently pending before the Court. (Docket nos. 64, 68, 71, 78.)

## II. GOVERNING LAW

Federal Rule of Civil Procedure 45 governs subpoenas and provides that the court must, upon motion, quash or modify a subpoena if it fails to allow a reasonable time to comply, requires a person to travel more than 100 miles from where they reside, requires disclosure of privileged or protected material if no exception or waiver applies, or subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). The party seeking to quash a subpoena bears a heavy

3

burden of proof. *U.S. v. Wells*, No. 06-10589, 2006 WL 3203905, at *2 (E.D. Mich. Nov. 3, 2006) (citation omitted).

Rule 26(b) defines the scope of discovery for a subpoena issued pursuant to Rule 45, and it allows a party to obtain discovery on any matter that is not privileged, is relevant to any party's claim or defense, and is proportional to the needs of the case. *Systems Prods. & Solutions, Inc. v. Scramlin*, No. 13-CV-14947, 2014 WL 3894385, at *9 (E.D. Mich. Aug. 8, 2014); Fed. R. Civ. P. 26(b)(1). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. But a district court must limit the scope of discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Rule 26(c) allows the court to issue protective orders for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that the disclosure or discovery not be had or that the disclosure or discovery be limited to certain matters. Fed. R. Civ. P. 26(c). The party seeking a protective order has the burden of showing that good cause exists for the order. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). To show good cause, the movant must articulate specific facts showing "clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* (citations and internal quotation marks omitted).

**III.   ANALYSIS**

Representatives Lyons and McCready and Senators Knollenberg, Robertson, and Meekhof move to quash Plaintiffs' subpoenas under the legislative privilege articulated in the Speech or Debate Clauses of the United States Constitution and the Michigan Constitution, the legislative privilege developed through federal common law, and other Michigan constitutional and statutory law.  (Docket no. 64 at 4; docket no. 68 at 5; docket no. 71 at 5, docket no. 78 at 3-5.)  They also claim that the subpoena is overly broad and seeks irrelevant information and that compliance with the subpoena would be unduly burdensome and expensive.  (Docket no. 64 at 11, 12-13; docket no. 68 at 12, 13-14; docket no. 71 at 9; docket no. 78 at 5.)  Defendant joins in and expands upon many of the legislators' arguments.[2] [3]  (Docket nos. 72, 83, 93, 94.)

The Speech or Debate Clause of the United States Constitution provides that "for any Speech or Debate in either House, [members of Congress] shall not be questioned in any other Place.  U.S. Const. art. I, § 6, cl. 1.  The purpose of the Clause is "'to prevent intimidation (of legislators) by the executive and accountability before a possibly hostile judiciary,'" *i.e.*, "to preserve the constitutional structure of separate, coequal, and independent branches of government."  *Powell v. McCormack*, 395 U.S. 486, 502 (1969) (quoting *United States v. Johnson*, 383 U.S. 169, 181 (1966)); *United States v. Helstoski*, 442 U.S. 477, 491 (1979).  It "not only provides a defense on the merits but also protects a legislator from the burden of defending himself."  *Id*. at 502–03 (citations omitted).  Essentially, "Congress enjoys absolute privilege from testimony and absolute immunity from liability under the Speech or Debate

---

[2] With regard to the legislators' and Defendant's assertions of overbreadth, burden, and expense, the Court finds that the temporal scope of the subpoenas – approximately one year of communications – is not overbroad.  In terms of the subpoenas' substantive scope, the instant Order will effectively reduce that scope to be more appropriate and less burdensome.

[3] Defendant also argues that the subpoenas are untimely because, although they were issued six weeks before the close of discovery, it would be impossible to comply with them by the discovery deadline, which will impact the Scheduling Order and delay the litigation.  (Docket no. 72 at 11-13.)  The Court agrees with Defendant that the subpoenas could have been timelier, but does not find that the subpoenas should be quashed on this basis.

Clause." *Jackson Municipal Airport Authority v. Bryant*, No. 3:16-cv-246-CWR-FKB, 2017 WL 6520967, at *4 (S.D. Miss. Dec. 19, 2017) (citing *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502-04 (1975)). The Michigan Constitution contains a substantially similar clause that affords parallel protections to state legislators: "[Senators and representatives] shall not be questioned in any other place for any speech in either house." MI CONST Art. 4, § 11.

The Federal Speech or Debate Clause, by its terms, protects federal legislators from Federal executive or judicial interference. And the Michigan Speech or Debate Clause protects Michigan's legislators against interference by the State's executive and judicial branches. But neither clause protects state legislators from federal interference; therefore, the clauses do not directly afford a legislative privilege to the state legislators in this matter. *See United States v. Gillock*, 445 U.S. 360, 374 (1980); *Nashville Student Org. Comm. v. Hargett*, 123 F. Supp. 3d 967, 969-70 (M.D. Tenn. 2015). Accordingly, the federal common law governs the existence of a legislative privilege for state legislators in federal question cases.[4] Fed. R. Evid. 501 (Unless the United States Constitution, a federal statute, or rules prescribed by the Supreme Court provide otherwise, "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege.").

It is well settled that federal common law has extended the absolute legislative immunity derived from the Federal Speech and Debate Clause to state legislators. *Bradley v. Mallory*, 871 F.2d 1087 (6th Cir. 1989) (citing *Tenney v. Brandhove,* 341 U.S. 367 (1951)). But the issue of whether the Clause's absolute legislative privilege has been similarly extended is not so definitively settled. State legislative privilege is related to but distinct from the concept of legislative immunity, and in federal question cases, it protects state legislators and their staffs

---

[4] Because the state legislators' claims of legislative privilege are governed by federal common law, the legislators' claims of legislative privilege under Michigan constitutional and statutory law are unavailing.

6

from compelled disclosure of documentary and testimonial evidence with respect to actions within the scope of legitimate legislative activity. *Favors v. Cuomo*, 285 F.R.D. 187, 209 (E.D.N.Y. 2012) (citing *Kay v. City of Rancho Palos Verdes,* No. CV 02–03922 MMM RZ, 2003 WL 25294710, at *9–11 (C.D.Cal. Oct. 10, 2003) and *Rodriguez v. Pataki,* 280 F.Supp.2d 89, 93-94, 95 (S.D.N.Y. 2003)).

Two Supreme Court cases are particularly instructive with regard to this issue. In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977), the Supreme Court stated that in cases alleging violations of the Equal Protection Clause, the legislative or administrative history of an official decision may be highly relevant and a proper subject of inquiry in determining whether the requisite proof of discriminatory intent or purpose existed in making the decision. In so stating, the Court recognized that "[i]n some extraordinary instances the members [of the decision-making body – which in that case was a municipal planning commission] might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege." *Id*. But in *Gillock, supra*, the Court declined to extend the evidentiary legislative privilege of the Speech or Debate Clause to state legislators in federal criminal prosecutions, reasoning, in relevant part, that "where important federal interests are at stake, as in the enforcement of federal criminal statutes, [the principles of] comity yield[]." 445 U.S. at 366-74.

The state legislators in this matter would have this court interpret the aforementioned Supreme Court precedent to mean that state legislators enjoy an absolute evidentiary legislative privilege except when they are faced with criminal prosecution. (*See* docket no. 96 at 4-6; docket no. 97 at 3.) To the contrary, the precedent suggests that state legislators enjoy only a qualified legislative privilege against having to provide records or testimony concerning their

7

legislative activity, which can be overcome in extraordinary circumstances, *e.g.*, where important federal interests are at stake. Indeed, in cases involving constitutional challenges to legislation under the Equal Protection Clause or Voting Rights Act like the one here, a majority of sister courts has reached a similar conclusion when interpreting this and other precedent regarding a state legislator's common law legislative privilege. *See Rodriguez,* 280 F.Supp.2d at 100; *Florida v. United States*, 886 F. Supp. 2d 1301, 1303–04 (N.D. Fla. 2012) (To be sure, a state legislator's privilege is qualified, not absolute; a state legislator's privilege is not coterminous with the privilege of a member of Congress under the Constitution's Speech and Debate Clause."); *Bryant*, 2017 WL 6520967, at *4-7; *Bethune-Hill v. Va. State Bd. of Elections*, No. 3:14CV852, 2015 WL 3404869, at *9 (E.D. Va. May 26, 2015); *N. Carolina State Conference of the NAACP v. McCrory*, No. 1:13CV658, 2014 WL 12526799, at *2 (M.D.N.C. Nov. 20, 2014), *objections overruled sub nom. N. Carolina State Conference v. McCrory*, No. 1:13CV658, 2015 WL 12683665 (M.D.N.C. Feb. 4, 2015) ("legislative privilege is not absolute, but rather requires a flexible approach that considers the need for the information while still protecting legislative sovereignty and minimizing any direct intrusion into the legislative process."); *Perez v. Perry,* No. SA–11–CA–360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) ("While the common-law legislative immunity for state legislators is absolute, the legislative privilege for state lawmakers is, at best, one which is qualified.") (citations and internal quotation marks omitted); *Favors v. Cuomo*, 285 F.R.D. 187, 211 (E.D.N.Y. 2012); *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections,* No. 11 C 5065, 2011 WL 4837508, at *7 (N.D. Ill. Oct. 12, 2011). *But see In re Grand Jury*, 821 F.2d 946, 958 (3d Cir. 1987) (rejecting even a qualified speech or debate privilege for state legislators, reasoning that such a privilege "would not realistically serve the purposes that the Speech or Debate Clause is

intended to advance."); *Lee v. Virginia State Bd. of Elections*, No. 3:15CV357 (HEH-RCY), 2015 WL 9461505, at *6 n.9 (E.D. Va. Dec. 23, 2015) (quoting *Burtnick*, 76 F.3d 611, 613 (4th Cir. 1996)) (absolute privilege); *Miles–Un–Ltd., Inc. v. Town of New Shoreham,* 917 F.Supp. 91, 98 (D.N.H. 1996) (absolute privilege).

As the preceding collection of cases demonstrates, the courts in sister circuits and districts have not adopted a consistent approach in the application of legislative privilege. And in the absence of binding Sixth Circuit precedent on the matter, the state legislators in this case would have the court disregard the decisions of its sister courts in favor of the Supreme Court's decisions in *Tenney* and *Gillock, supra*. (*See* docket no. 68 at 13; docket no. 97 at 3.) But *Tenney* dealt primarily with legislative immunity from suit, not a legislative evidentiary privilege. *See Tenney,* 341 U.S. at 379 ("We conclude only that here the individual defendants and the legislative committee were acting in a field where legislators traditionally have power to act, and that the statute of 1871 does not create civil liability for such conduct."); *Loesel v. City of Frankenmuth*, No. 08-11131-BC, 2010 WL 456931, at *6 (E.D. Mich. Feb. 4, 2010). And as discussed above, *Gillock* is suggestive of a qualified legislative privilege that can be overcome where important federal interests are at stake. Accordingly, in light of the aforementioned precedent, this Court concludes that the best approach is to apply a qualified legislative privilege to state legislators and balance the importance of the information sought and the federal interests at stake against the sanctity of the legislative process. *See McCrory*, 2014 WL 12526799, at *2 (Qualified legislative privilege constitutes "a flexible approach that considers the need for the information while still protecting legislative sovereignty and minimizing any direct intrusion into the legislative process."); *Kay*, 2003 WL 25294710, at *14 ("[T]he cases applying a qualified privilege represent the better, and controlling, legal rule. In part this is so because those cases

jibe much better with the Supreme Court's never-say-never approach to the privilege in *Arlington Heights*.")

The cases applying a qualified legislative privilege have used a five-factor balancing test to analyze application of the privilege, which the Court will follow here. The factors to be considered are "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Rodriguez*, 280 F. Supp. 2d at 100–01 (citation omitted). The Court may also take into account "the purpose of the legislative privilege, evidence that the legislator's compliance would divert them from their legislative duties and/or impose an impermissible burden upon them, and the possibility of waiver as to any document." *McCrory*, 2014 WL 12526799, at *2.

With regard to relevance, the Supreme Court's decision in *Arlington Heights* is particularly instructive. In that case, the Court held that in cases involving claims of racial discrimination in violation of the Equal Protection Clause, the legislative history of the official action "may be highly relevant" in determining whether "invidious discriminatory purpose was a motivating factor" in the action, "especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *Arlington Heights*, 429 U.S. at 264-68. *See also S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1259 (4th Cir. 1989) (acknowledging that "limited exceptions to the principle that judicial inquiry into legislative motive is to be avoided" exist in cases such as those involving claim of race discrimination where "the very nature of the constitutional question requires an inquiry into legislative purpose."); *McCrory*, 2014 WL 12526799, at *2.

But while testimony and other communications reflecting a legislator's stated motivation might be the most direct form of evidence of discriminatory intent, it is not necessary to sustain a claim under the Equal Protection Clause or Voting Rights Act. *Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *2–3 (N.D. Ill. Oct. 12, 2011). In *Arlington Heights*, the Supreme Court identified three categories of direct and circumstantial evidence that may be considered in determining whether racially discriminatory intent existed: the impact of the official action; the historical background or specific sequence of events leading up to the challenged action; and the legislative history of the action. *Arlington Heights*, 429 U.S. at 264-68. Under this precedent, communications reflecting a legislator's stated motivation are just one of the various types of evidence that Plaintiffs may use to prove their claims, and they are therefore not central to the outcome of this case. *See Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *4, 8.

Furthermore, in the context of determining legislative intent, courts have declared that "statements from only a few legislators, or those made by legislators after the fact, are of limited value." *N. Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204, 229 (4th Cir. 2016), *cert. denied sub nom. North Carolina v. N. Carolina State Conference of NAACP*, 137 S. Ct. 1399 (2017). Notably, the Supreme Court has cautioned against inquiries into legislative motive or purpose on this basis:

> Inquiries into congressional motives or purposes are a hazardous matter. When the issue is simply the interpretation of legislation, the Court will look to statements by legislators for guidance as to the purpose of the legislature, because the benefit to sound decision-making in this circumstance is thought sufficient to risk the possibility of misreading Congress' purpose. It is entirely a different matter when we are asked to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it. What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.

11

*Hunter v. Underwood*, 471 U.S. 222, 228 (1985) (quoting *United States v. O'Brien,* 391 U.S. 367, 383–384 (1968) (footnote omitted)). *See also John Does 1-4 v. Snyder*, 932 F. Supp. 2d 803, 810 (E.D. Mich. 2013) ("[C]ourts are wary of considering the 'almost always cacophonous' comments of individual legislators in determining legislative intent.") (citing *Isle Royale Boaters Ass'n v. Norton*, 330 F.3d 777, 784 (6th Cir. 2003) (legislative "intent is better derived from the words of the statute itself than from a patchwork record of statements inserted by individual legislators and proposals that may never have been adopted by a committee, much less an entire legislative body.")). Even the *Arlington Heights* Court held that in the extraordinary instances where legislators might be called to testify concerning the purpose of the official action, such testimony frequently will be barred by privilege. *Id*. at 268. This precedent suggests that even though the information sought by Plaintiffs from the state legislators is relevant, its relevance is insufficient to overcome the legislative privilege. Accordingly, this factor weighs in favor of the state legislators, especially in light of the availability of other evidence, as discussed below.

With regard to the second factor – the availability of other evidence – Plaintiffs, in a section heading of their Response to the instant Motions, state in conclusory fashion that "[o]ther evidence of discriminatory intent is not available." (Docket no. 88 at 18.) To the contrary, and as Senator Meekhof points out, Plaintiffs have a considerable amount of direct and circumstantial evidence available to them that they may rely (and have relied) upon to support their claims, including historical information related to previous appeals of straight ticket voting, publicly available studies and reports; statements made by legislators during debate, speeches, or on social media; press releases; newspaper articles; committee meeting minutes; and the Senate Journal." (Docket no. 95 at 8 & n.3 (citing docket nos. 1-11, 1-12, 1-13, 1-15, 1-16, and 1-17).) This factor weighs in favor of quashing the subpoenas.

The third and fourth factors weigh in Plaintiffs' favor, as the present litigation involves serious and important questions regarding how 2015 P.A. 268's abolition of straight-party voting affects the constitutional rights of Michigan's citizens and the integrity of its elections. *See McCrory*, 2014 WL 12526799, at *3 (citing *Page v. Virginia State Bd. of Elections*, 15 F. Supp. 3d 657, 667 (E.D. Va. 2014) ("The right to vote and the rights conferred by the Equal Protection Clause are of cardinal importance.")). And the government is directly involved in the litigation, as Ruth A. Johnson, Michigan's Secretary of State and "chief election officer," Mich. Comp Laws § 168.21, is being sued in her official capacity and is the sole defendant in this matter. (*See* docket no. 56 ¶ 11.)

Lastly, the Court finds that the fifth factor – the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable – favors the state legislators. "Open dialogue between lawmakers and their staff would be chilled if their subjective, preliminary opinions and considerations are potentially subject to public disclosure and critique." *Citizens Union of City of New York v. Attorney Gen. of New York*, No. 16CV09592RMBKHP, 2017 WL 3836057, at *29 (S.D.N.Y. Sept. 1, 2017). If Plaintiffs are permitted to delve into the state legislators' private communications with other legislators or with their staff regarding the introduction, consideration, or passage of 2015 P.A. 268, it is likely that these legislators, as well as other current and future legislators, will refrain from engaging in the frank and candid deliberation about, and analysis of, proposed legislation that is necessary to sustain our republican form of government. *See id.* Accordingly, this factor weighs in favor of quashing the subpoenas.

Having balanced the *Rodriguez* factors in this matter, the Court finds that Plaintiffs' need for the information sought through the subpoenas is insufficient to overcome the legislative

13

privilege, even in the context of this serious equal protection and voting rights litigation. The factors weigh in favor of quashing the subpoenas, at least to the extent that the information Plaintiffs seek is protected by the legislative privilege.

"Courts following *Rodriguez* have found that the privilege applies to any documents or information that contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." *Bryant*, 2017 WL 6520967, at *7 (citations and internal quotation marks omitted). "The privilege . . . also applies to any information that would reveal such opinions and motives. This includes any procedures used by lawmakers in the legislative process as well as the identification of any specific legislators that were involved in any particular step in the process." *Id.* Accordingly, the state legislators may withhold any responsive privileged information as described above from production, and they must produce a privilege log regarding the same.

But communications between legislators or their staff and any third party are not protected by the legislative privilege. *Bryant*, 2017 WL 6520967, at *7; *Almonte v. City of Long Beach*, No. CV 04-4192(JS)(JO), 2005 WL 1796118, at *3 (E.D.N.Y. July 27, 2005) ("Legislative and executive officials are certainly free to consult with political operatives or any others as they please, and there is nothing inherently improper in doing so, but that does not render such consultation part of the legislative process or the basis on which to invoke privilege."). Thus, to the extent that the state legislators in this matter have shared any of the documents or information sought by Plaintiffs with third parties that would otherwise have been protected by the legislative privilege, the privilege has been waived, and the legislators must produce those documents along with any non-privileged information responsive to the subpoenas that is within their possession, custody, or control. *See Bryant*, 2017 WL 6520967, at *8.

**IT IS THEREFORE ORDERED** that Non-Parties Lisa Posthumus Lyons, Michael McCready, Marty Knollenberg, David Robertson, and Arlan Meekhof's Motions to Quash Subpoena [64], [68], [71], and [78] are **GRANTED IN PART** and **DENIED IN PART** as follows:

a. Plaintiffs' subpoenas for any testimony, documents, or materials protected by the legislative privilege are quashed;

b. The depositions of state legislators Lyons, McCready, Knollenberg, Robertson, and Meekhof may proceed with regard to any non-privileged testimonial information, and they must be completed at a mutually agreeable time and place within forty-five (45) days of this Opinion and Order;

c. State legislators Lyons, McCready, Knollenberg, Robertson, and Meekhof will produce to Plaintiffs any non-privileged documents or materials, or any documents or materials for which the legislative privilege has been waived, responsive to the subpoena within their possession, custody, or control within thirty (30) days of this Opinion and Order; and

d. To the extent that state legislators Lyons, McCready, Knollenberg, Robertson, and Meekhof withhold any documents or materials from production on the basis of legislative privilege, they will produce a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5) by the aforementioned thirty-day production deadline.

## NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: January 4, 2018          s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon counsel of record on this date.

Dated: January 4, 2018          s/ Leanne Hosking
                                Case Manager