UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN STATE A. PHILIP
RANDOLPH INSTITUTE, ET AL.,

Plaintiffs,

v.

RUTH A. JOHNSON,

Defendant.
_____/

Case No. 16-cv-11844

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MONA K. MAJZOUB

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS [#169] IN PART

### I. INTRODUCTION

Present before the Court is Plaintiffs Michigan State A. Philip Randolph Institute, Mary Lansdown, Erin Comartin, Dion Williams, and Common Cause's Motion for Attorneys' Fees and Costs. Dkt. No. 169. For the reasons set forth below, the Court will GRANT the Motion IN PART [#169] and award attorneys' fees and costs in the amount of $530,874.29.

### II. BACKGROUND

Plaintiffs initiated this suit against Michigan Secretary of State Ruth A. Johnson ("Defendant") on May 24, 2016, challenging the constitutionality of Public Act 268, which eliminated straight-ticket voting in Michigan. Dkt. No. 1.

On July 22, 2016, the Court granted Plaintiffs' Motion for a Preliminary Injunction, thereby enjoining the statute from going into effect. Dkt. No. 25. As a result, straight-ticket voting remained available for both the November 2016 General Election and the November 2017 Odd-Year Election. *See* Dkt. No. 172, p. 5 (Pg. ID 4969).

On August 1, 2018, after conducting a bench trial, the Court entered a Judgment in favor of Plaintiffs and granted their request for a permanent injunction. Dkt. No. 151; Dkt. No. 152. Defendant appealed, and on September 5, 2018, the Sixth Circuit issued a stay of that injunction. Dkt. No. 161. Consequently, Public Act 268 was operative for the November 2018 General Election. Dkt. No. 172, p. 6 (Pg. ID 4970).

During the 2018 General Election, Michigan voters passed Proposal 18-3, which amended the Michigan Constitution to preserve straight-ticket voting. *Id.* Because of the amendment, this case became moot on appeal, and the Sixth Circuit entered an order directing the Court to vacate judgment and dismiss Plaintiffs' Complaint on remand. Dkt. No. 163.

Now, Plaintiffs bring the instant Motion, arguing they are entitled to $1,149,041.25 in attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e) because they obtained a favorable judgment in the district court that was never reversed on the merits. Dkt. No. 169.

# III. DISCUSSION

## A. Plaintiffs are the Prevailing Party with Respect to the Court's Order Granting a Preliminary Injunction.

"Under 42 U.S.C. § 1988(b), the 'prevailing party' in an action to enforce civil rights under § 1983 may recover 'a reasonable attorney's fee as part of the costs' of litigation." *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014) (quoting *Hescott v. City of Saginaw*, 757 F.3d 518, 2014 WL 2959289, at *3 (6th Cir. 2014)). "To be considered a prevailing party, a litigant must have 'receive[d] at least some relief on the merits of his claim' amounting to a 'court-ordered change in the legal relationship between the plaintiff and the defendant.'" *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001)). "Absent a direct benefit, the plaintiff achieves only a symbolic victory, which § 1988(b) does not compensate." *McQueary v. Conway*, 614 F.3d 591, 598 (6th Cir. 2010).

In certain contexts, the attainment of a preliminary injunction can serve as a basis for prevailing party status. *See McQueary*, 614 F.3d at 600. Courts are thus instructed to exercise their discretion and undertake a case-specific factual inquiry. *Id.* at 604. Generally, "there is only prevailing party status if the [preliminary] injunction represents an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of the equities greatly favors the plaintiff." *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 753

(6th Cir. 2002) (internal quotations omitted). Additionally, where a claimant wins a preliminary injunction, and nothing more, a request for attorney's fees should typically be denied. *See McQueary*, 614 F.3d at 604; *see also Sole v. Wyner*, 551 U.S. 74, 86 (2007) ("We decide only that a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under § 1988(b) if the merits of the case are ultimately decided against her.").

Here, the Court finds that Plaintiffs are entitled to attorneys' fees in connection with their request for a preliminary injunction. The Court granted Plaintiffs' request for a preliminary injunction on July 22, 2016. Dkt. No. 25. As a result, Defendant was precluded from enforcing Public Act 268 during two election cycles: the November 2016 General Election and the November 2017 Odd-Year Election. Furthermore, the preliminary injunction was predicated on the likelihood that Plaintiffs would succeed on the merits of their claims, and not just on maintaining the status quo. *See id.*; *Dubuc*, 312 F.3d at 753.

Following the preliminary injunction, Plaintiffs went on to win on the merits of their claims, obtaining both a favorable Judgment and an Order permanently enjoining Public Act 268. *See* Dkt. No. 151; Dkt. No. 152. Although the Sixth Circuit stayed the permanent injunction, and later dismissed the case on appeal as moot, this Court's decision was never reversed on the merits. Hence, this is not a case where Plaintiffs obtained a preliminary injunction, only to receive an

unfavorable outcome in the end. *Cf. Sole*, 551 U.S. at 83 ("Prevailing party status, we hold, does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case."). Nor is this a case where Plaintiffs obtained a preliminary injunction, and nothing more. *See McQueary*, 614 F.3d at 604. Accordingly, Plaintiffs are the prevailing party with respect to the Court's Order granting a preliminary injunction.

> **B. Plaintiffs are not the Prevailing Party with Respect to the Court's Order Granting a Permanent Injunction.**

While Plaintiffs were the prevailing party with respect to the Court's Order granting a preliminary injunction, the same cannot be said regarding the Order granting a permanent injunction.

Again, to achieve prevailing party status, a litigant must receive at least some relief on the merits of his claim. *Hargett*, 767 F.3d at 552. "If the court of appeals reverses on the merits of the underlying claims, the formerly prevailing party no longer prevails and is no longer entitled to fees." *Id.* But "if the reversal is not on the merits, it does not necessarily upset the prevailing party's status." *Id.* "When plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still prevailing parties for the purposes of attorney's fees for the district court

litigation." *Id.* (quoting *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 454 (1st Cir. 2009)).

Here, it is undisputed that Plaintiffs obtained the relief that they sought from this Court. Indeed, the Court entered a Judgment in their favor and granted their request to permanently enjoin Public Act 268. The Sixth Circuit did not reverse this decision on the merits; rather, an intervening event, the passage of Proposal 18-3, rendered the case moot on appeal. Under these facts, Plaintiffs would be considered the prevailing party for purposes of attorneys' fees. *See id.*

Defendant concedes that, in theory, this is the correct conclusion. *See* Dkt. No. 172, p. 12 (Pg. ID 4976) ("Defendants [sic] agree, generally, that a dismissal on mootness grounds based on a statutory change (or in this case constitutional amendment) and a vacatur of the district court order do not, in and of themselves, negate a party's status as a prevailing party."). However, Defendant contends that the Sixth Circuit's stay of the permanent injunction alters the prevailing party analysis because the stay prevented any court-ordered change in the parties' legal relationship from materializing. *See Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."). Although it

does not appear that the Sixth Circuit has ever addressed this issue, Defendant presents two out-of-circuit cases in support.

Defendant first cites to *UFO Chuting of Hawaii, Inc. v. Smith*, where the Ninth Circuit held that plaintiffs were not the prevailing party under § 1988 despite having initially obtained a final judgment and a permanent injunction. 508 F.3d 1189, 1198 (9th Cir. 2007). In that case, plaintiffs filed suit challenging whether a Hawaii statute prohibiting parasailing activity from December 15 to May 15 of each year was pre-empted by federal law. *Id.* at 1191. The district court held that it was, and permanently enjoined the statute. *Id.*

Subsequently, the President signed into law a bill permitting Hawaii to enforce that very statute. *Id.* at 1192. Immediately after, the state filed a motion to stay the permanent injunction and vacate the judgment. *Id.* On December 13 of that year, two days before the permanent injunction was set to go into effect, the district court granted both motions and entered summary judgment in favor of the state. *Id.* The district court also denied plaintiffs' motion for attorney's fees, reasoning that plaintiffs were not the prevailing party because the permanent injunction was never implemented, and therefore, plaintiffs never received its benefit. *Id.* The Ninth Circuit affirmed that decision on the same grounds. *Id.* at 1198 ("Because the district court stayed the implementation of the permanent

injunction before the State had to change its behavior . . . [plaintiffs] cannot be considered the 'prevailing party.'").

Defendant also cites to *Doe v. Nixon*, where the Eighth Circuit held that plaintiffs were not the prevailing party after having their preliminary injunction stayed by the court of appeals and their complaint dismissed as moot. 716 F.3d 1041, 1049 (8th Cir. 2013). There, plaintiffs filed suit challenging Missouri's "Halloween Statute," which required any registered sex offender to, among other things, avoid all Halloween-related contact with children on October 31 of each year. *Id.* at 1045-46. After the district court granted plaintiffs' motion for a preliminary injunction, the state appealed, and the Eighth Circuit issued a stay, one day before the injunction was set to take effect. *Id.* at 1046. Once that year's Halloween had passed, the Eighth Circuit dismissed the state's appeal as moot. *Id.*

After the case was remanded to the district court, separate state court litigation deemed the Halloween Statute unconstitutional as applied to plaintiffs. *Id.* at 1047. This, in turn, rendered plaintiffs' lawsuit moot, resulting in the dismissal of the case. *Id.* Despite the dismissal, the district court awarded plaintiffs with attorney's fees, finding they were the prevailing party because they had obtained the preliminary injunction. *Id.* at 1047. The Eighth Circuit, however, disagreed, explaining that while "the preliminary injunction may have served as a court-ordered change in the parties' legal relationship, this change was never

realized because of our stay of that order." *Id.* at 1049. The court concluded that the district court's order "effectively served as a judicial pronouncement without judicial relief." *Id.*; *see Farrar*, 506 U.S. at 110 ("[A] judgment—declaratory or otherwise—will constitute relief, for purposes of § 1988, if, and only if, it affects the behavior of the defendant toward the plaintiff.") (internal quotations omitted).

At first glance, both cases provide meaningful guidance; though, *UFO Chuting* is arguably distinguishable in one respect. Namely, unlike in *UFO Chuting*, this Court's Final Judgment was never reversed on the merits, but instead dismissed on appeal as moot. *Cf.* 508 F.3d at 1192 (the district court stayed the permanent injunction, vacated the plaintiffs' judgment, and then entered summary judgment in favor of the State). Nevertheless, the decision in *UFO Chuting* did not turn on the reversal of plaintiffs' underlying claims; rather, the Ninth Circuit focused on the fact that a court-ordered stay absolved the state from having to change its behavior towards the plaintiffs. *See id.* at 1198. Hence, plaintiffs never received a direct benefit from the district court's injunction. *Id.*; *see McQueary v. Conway*, 614 F.3d 591, 598 (6th Cir. 2010) ("A material change directly benefits a plaintiff by modifying the defendant's behavior toward him. Absent a direct benefit, the plaintiff receives only a symbolic victory, which § 1988(b) does not compensate.") (internal quotations and citations omitted).

Here, like in *UFO Chuting*, Plaintiffs never received the benefit of this Court's Order granting their request for a permanent injunction. *See* 508 F.3d at 1198. The injunction Order was entered on August 1, 2018, but stayed by the Sixth Circuit on September 5, 2018, thereby allowing Defendant to enforce Public Act 268 during the November 2018 General Election. Because the case was dismissed following that Election, the permanent injunction never forced Defendant to alter her behavior towards Plaintiffs.

The Eighth Circuit's decision in *Doe* provides an even closer parallel. *See* 716 F.3d at 1049. Here, like in that case, a stay from the court of appeals prevented an order for injunctive relief from going into effect. *See id.* Essentially then, the Court issued a judicial pronouncement unaccompanied by any judicial relief. This does not entitle Plaintiff to attorneys' fees. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 606 (2001) (holding party does not prevail where they acquire a judicial pronouncement without judicial relief).

In short, the Court finds that Plaintiffs did not prevail with respect to the Court's Order granting their request for a permanent injunction. Both *UFO Chuting* and *Doe* suggest that a court-ordered stay alters the prevailing party analysis. *See* 508 F.3d at 1198; 716 F.3d at 1049. This is consistent with the touchstone of the prevailing party inquiry; that is, whether there is a material

change in the legal relationship between the parties. *See Farrar*, 506 U.S. at 111 ("[T]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties."). Here, the Sixth Circuit's stay of the permanent injunction prior to the 2018 General Election prevented any such change from occurring. *See Nken v. Holder*, 556 U.S. 418, 429 (2009) (noting a stay suspends judicial alteration of the status quo).

### C. The Court will Award Plaintiffs with Attorneys' Fees and Costs for Work Completed in Connection with the Preliminary Injunction.

"Title 42 U.S.C. § 1988 provides that in federal civil rights actions 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" *Blum v. Stenson*, 465 U.S. 886, 888 (1984) (quoting 42 U.S.C. § 1988(b)). "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* "Adjustments to that fee then may be made as necessary in the particular case." *Id.*

The party seeking attorney's fees bears the burden of submitting evidence supporting the hours worked and the rates sought. *The N.E. Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). "In determining hours, a court must exclude from this initial fee calculation hours that were not reasonably expended." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)) (internal quotations omitted). To that end, "[c]ounsel are expected to exclude from a fee

request hours that are excessive, redundant, or otherwise unnecessary." *Id.* (quoting *Hensley*, 461 U.S. at 434) (internal quotations omitted).

Similarly, "[h]ourly rates should not exceed what is necessary to encourage competent lawyers within the relevant community to undertake legal representation." *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995). Indeed, fees should be based on market rates for the services rendered. *Id.* To guide the inquiry, courts ordinarily look to "rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (quoting *Blum*, 465 U.S. at 896 n.11). But in the case of private attorneys, "normal billing rates usually 'provide an efficient and fair short cut for determining the market rate.'" *Id.* (quoting *Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 422 (3d Cir. 1993)).

As an initial matter, because Plaintiffs prevailed only with respect to the preliminary injunction, the Court must attempt to identify and isolate the work their attorneys completed in connection with that court order. *See* Dkt. No. 25. The Supreme Court has cautioned that "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. Considering this, and in furtherance of fairness and efficiency, the Court will credit Plaintiffs for all work their attorneys completed on or before September 9, 2016. There are two reasons for selecting this date.

First, this date encompasses the time Plaintiffs spent litigating their Motion for a Preliminary Injunction. That Motion was filed on May 27, 2016 and the Court granted the Motion on July 22, 2016. *See* Dkt. No. 4; Dkt. No. 25. Second, this date marks the day on which the Supreme Court denied Defendant's Petition to Stay the Preliminary Injunction, signaling an end to the litigation surrounding the preliminary injunction. *See* Dkt. No. 169-3, p. 5 (Pg. ID 4912).

With this time frame in mind, the Court will now turn to the fee requests submitted by each of Plaintiffs' attorneys.

1. <u>Mary E. Gurewitz</u>

Attorney Mary Gurewitz served as one of two lead counsel in this case. She has practiced law for forty-four years and is currently Of Counsel at her fourteen-person Detroit-based law firm. Dkt. No. 169-1, p. 2 (Pg. ID 4902). She specializes in the representation of labor unions, in both the public and private sectors, and in political and election law. *Id.* In past cases, she has been awarded attorney's fees in the range of $350 to $475 per hour. *Id.* at p. 3 (Pg. ID 4903).

Attorney Gurewitz asserts that from March 21, 2016 to March 6, 2019 she spent 1,046.9 hours working on this case. Dkt. No. 169-3, pp. 2-14 (Pg. ID 4909-21). 257.2 of these hours were for work completed on or before September 9,

2016. *Id.*[1]  She is asking to be compensated at a rate of $500 per hour.  Dkt. No. 169-1, p. 6 (Pg. ID 4906).  Defendant, on the other hand, argues that she should only be compensated at a rate of $325 per hour based on the median compensation for Of Counsel attorneys in the state of Michigan.  *See* Dkt. No. 169-4, p. 3 (Pg. ID 4929).

Here, the Court finds that a rate of $500 per hour is reasonable compensation for Attorney Gurewitz's services.  Per the Michigan State Bar Economics of Law Survey, this figure places her between the 75th and 95th percentiles of hourly billing rates for Of Counsel attorneys in the state.  *See* Dkt. 169-4, p. 3 (Pg. ID 4929).  Given her forty-four years of experience, her expertise within the field of election law, and the complexity of this case, there is justification for compensating her at the upper end of this spectrum.  Moreover, the $500 per hour rate falls within range of the compensation she has been awarded in past cases  Accordingly, Attorney Gurewitz is entitled to $128,600 in attorney's fees for the 257.2 hours of work she expended in this case through September 9, 2016.

2. John R. Runyan, Jr.

Attorney John Runyan, Jr. is a partner at Attorney Gurewitz's law firm, and served as support counsel.  He asserts that he spent 2.3 hours working on this case

---

[1] This number does not include the 2.3 hours that Attorney Gurewitz worked on September 9, 2016 following her review of the Supreme Court's Order Denying Defendant's Petition to Stay the Preliminary Injunction. *See* Dkt. No. 169-3, p. 5 (Pg. ID 4912).

from January 30, 2019 through January 31, 2019. Dkt. No. 169-3, p. 14 (Pg. ID 4921). However, because all of this work falls outside of the applicable time frame set by the Court (on or before September 9, 2016), his request for attorney's fees will be Denied.

3. <u>Andrew Nickelhoff</u>

Attorney Andrew Nickelhoff is another partner at Attorney Gurewitz's law firm who served as support counsel. He claims that he spent 3.4 hours working on this case, but only 0.9 of those hours were for work completed on or before September 9, 2016. *Id.* at pp. 14-15 (Pg. ID 4921-22). He, like Attorney Gurewitz, requests to be compensated at a rate of $500 per hour. Dkt. No. 169-1. P. 6 (Pg. ID 4906). Defendant, however, asks the Court to compensate him at a rate of $250 per hour, consistent with the median rate for attorneys practicing in downtown Detroit. *See* Dkt. No. 169-4, p. 4 (Pg. ID 4930).

Here, the Court agrees that $250 per hour is the appropriate rate of compensation for Attorney Nickelhoff. This figure places him around the 25th percentile for Partner billing rates in the state of Michigan. *See id.* at p. 3 (Pg. ID 4929). The Court chooses the lower end of this spectrum for two reasons. First, Attorney Nickelhoff provided no background information about his experience as an attorney or within this field of law. Hence, the Court has little basis for comparison. Second, his contribution in this case was scant. Indeed, the 0.9 hours

he contributed through September 9, 2016 involved mostly participation in office conferences. *See* Dkt. No. 166-3, pp. 14-15 (Pg. ID 4921-22). Accordingly, the Court will award Attorney Nickelhoff $225 in attorney's fees.

### 4. Marshall J. Widick

Attorney Marshall Widick is also a partner at Attorney Gurewitz's law firm and served as support counsel. He spent 1.2 hours working on this case on August 21, 2017. Dkt. No. 169-3, p. 15 (Pg. ID 4922). Here, however, his work falls outside of the applicable time frame set by the Court (on or before September 9, 2016), and thus, his request for attorney's fees will be Denied.

### 5. Mami Kato

Attorney Mami Kato, a partner at Attorney Gurewitz's law firm, provided support on this case from August 11, 2016 to December 17, 2018. *Id.* She calculates her total contribution to be 5.7 hours; though, only 2.5 of these hours came on or before September 9, 2016. *Id.* She requests an hourly rate of $500. Dkt. No. 169-1, p. 6 (Pg. ID 4906). In response, Defendant argues that she should be compensated at a rate of $250 per hour, in line with the median rate for attorneys in downtown Detroit. Dkt. No. 172, p. 20 (Pg. ID 4984).

Here, for the same reasons explained above with respect to Attorney Nickelhoff, the Court finds that $250 per hour is appropriate compensation for

Attorney Kato. Accordingly, the Court will award her $625 in attorney's fees for the 2.5 hours she contributed to this case through September 9, 2016.

### 6. Richard M. Olszewski

Attorney Richard Olszewski is an Associate at Attorney Gurewitz's law firm who worked on this case from June 23, 2016 to July 21, 2017 for a total of 23.4 hours. Dkt. No. 169-3, pp. 15-16 (Pg. ID 4922-23). 13.3 of these hours came on or before September 9, 2016. *Id.* Unlike his fellow colleagues, he requests to be compensated at a lower rate of $250 per hour. Dkt. No. 169-1, p. 6 (Pg. ID 4906). Defendant argues for an even lower rate of $200 per hour, consistent with the 25th percentile for attorneys in downtown Detroit. Dkt. No. 172, p. 20 (Pg. ID 4984).

Here, the Court finds that $200 per hour is an appropriate rate of compensation for Attorney Olszewski. This figure places him around the 25th percentile for Associate billing rates in Michigan. *See* Dkt. No. 169-4, p. 3 (Pg. ID 4929). The Court chooses the lower end of this spectrum because he provided no background information about his experience as an attorney or in this particular field of law. Furthermore, his contribution to this case during the applicable period was minimal: a total of 13.3 hours. *See* Dkt. No. 169-3, pp. 15-16 (Pg. ID 4922-23). Accordingly, Attorney Olszewski is entitled to $2,660 in attorney's fees.

7. <u>Mark C. Brewer</u>

Attorney Mark Brewer served as lead counsel in this case along with Attorney Gurewitz. He has practiced law in the state of Michigan for over thirty-five years, and currently works for the Southfield-based firm of Goodman Acker, P.C. Dkt. No. 169-5, p. 2 (Pg. ID 4934). There, he specializes in political, campaign finance, and election law. *Id.* In his practice, he bills clients anywhere from $300 to $500 per hour. *Id.* at p. 3 (Pg. ID 4935).

Attorney Brewer asserts that he spent a total of 1060.9 hours working on this case from February 25, 2016 to February 20, 2019. Dkt. 169-6. 796.3 of those hours came on or before September 9, 2016. *Id.* He requests to be compensated at a rate of $500 per hour. Dkt. No. 169-5, p. 5 (Pg. ID 4937). Defendant, however, argues that he should be limited to a rate of $275 per hour based on the average for his experience, location, and practice area.

Here, consistent with the award to Attorney Gurewitz, the Court finds that $500 per hour is the appropriate rate of compensation for Attorney Brewer. While it is unclear the position that he holds at his law firm, his thirty-five years of practice, and his expertise in political, campaign finance, and election law, warrants an award comparable to Attorney Gurewitz. The fact that he contributed the most hours in this case during the applicable period lends even more support to this conclusion. Further, this $500 per hour rate falls squarely within his normal

client billing rate. *See Hadix*, 65 F.3d at 536 (holding normal billing rates usually provide an efficient and fair short cut for determining the market rate). Accordingly, the Court will award Attorney Brewer $398,150 in attorney's fees for the 796.3 hours he worked on this case through September 9, 2016.

      8. <u>Total Fees and Costs</u>

In total, Plaintiffs are entitled to $530,260 in attorneys' fees. In addition to this amount, 52 U.S.C. § 10310(e) permits courts, in an action to enforce voting rights, to award the prevailing party reasonable litigation expenses as part of the costs. 52 U.S.C. § 10310(e) ("In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of costs.").

Here, Attorney Gurewitz identifies a $214.29 Lexis Nexis billing charge from August 11, 2016. *See* Dkt. 169-3, p. 17 (Pg. ID 4924). Because this charge is dated around the time the parties were litigating Defendant's Emergency Motion to Stay the Preliminary Injunction, the Court will presume a connection to that injunction. Hence, this cost will be recoverable. *See Smith v. Service Master Corp.*, 592 F. App'x 363, 368 (6th Cir. 2014) ("We see no reason for an absolute

rule that the cost of computer research is or is not recoverable. Any recovery should be for the actual cost of the online access or service.").[2]

Attorney Brewer also identifies a $400 filing fee charge. *See* Dkt. No. 169-5, p. 6 (Pg. ID 4938). The Court's docket shows that Plaintiffs paid a $400 filing fee when they initiated this suit on May 24, 2016. Therefore, this cost will likewise be recoverable. *See* Dkt. No. 1.[3] Accordingly, Plaintiffs are entitled to $530,260 in attorneys' fees plus $614.29 in litigation costs, bringing their total award to $530,874.29.

### D. The Court will not Implement a Ten to Twenty-Percent Across-the-Board Reduction for Duplicative Billing and/or Vague or Block-Billing Entries.

Defendant asks the Court to reduce any fee award amount by ten to twenty percent because Plaintiffs allegedly engaged in duplicative billing and/or vague or block billing practices. Dkt. No. 172, p. 17 (Pg. ID 4981). The Court will Deny this request.

To establish that one is entitled to reimbursement for particular items of attorneys' fees, "the fee petitioner must provide the court with the attorneys' billing records that describe the work performed in sufficient detail to establish that

---

[2] Attorney Gurewitz identifies several other costs related to this case. However, these costs were either accrued after September 9, 2016 or not associated with a particular date.

[3] Attorney Brewer also identifies $161.63 in Lexis Nexis research charges. However, he fails to link these charges with any particular date.

the work is reasonably related to the litigation." *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005) (quoting *In re Samuel R. Pierce, Jr.*, 190 F.3d 586, 593-94 (D.C. Cir. 1999)). "The Supreme Court has instructed district courts to exclude fees that were not 'reasonably expended,' such as fees due to overstaffing or redundancy of work." *Id.* at 937 (citing *Hensley*, 461 U.S. at 434).

Defendant first argues that the Court should implement a twenty-percent across-the-board fee reduction because several of Plaintiffs' attorneys billed for work on the same documents and for a considerable amount of conferencing among themselves. Dkt. No. 172, p. 23 (Pg. ID 4987). As examples, Defendant notes eighteen billing entries by Attorney Brewer showing he researched and drafted the Complaint in this case, while Attorneys Gurewitz and Nickelhoff billed for reviewing and revising that same Complaint; twenty entries by Attorney Brewer for drafting a brief, while Attorney Gurewitz billed for reviewing and working on that same brief; and several entries by Attorneys Brewer and Gurewitz identifying calls placed and emails sent between the two of them. *See id.* at pp. 24-25 (Pg. ID 4988-89).

Here, the examples that Defendant cites of duplicative billing do not suggest that Plaintiffs' attorneys' fees request is unreasonable. There is nothing unusual about lawyers collaborating on and reviewing each other's work. Nor is it unusual for attorneys to regularly communicate with each other, especially here where the

two lead attorneys are from different law firms.  *See Gratz*, 353 F. Supp. 2d at 942 (recognizing there is nothing inherently unreasonable about making an award for time spent by two or more lawyers engaged in the same representation).  This was a complex voting rights case requiring, as Plaintiffs emphasize, "significant efforts to research and draft the complaint, amass supporting evidence, secure expert witnesses, [and] draft pleadings for the district court and court of appeals."  *See* Dkt. No. 175, p. 12 (Pg. ID 5153).  Any overlap by Plaintiffs' attorneys in these efforts was not so excessive, or unnecessary, such as to warrant the type of reduction that Defendant requests.

Furthermore, this is not a case where the attorneys' fees award has been inflated due to overstaffing.  Most of the work was completed by two attorneys.  In fact, outside of Attorneys Gurewitz and Brewer, the most the Court awarded to any individual was $2,660; and this was primarily for time spent conducting independent legal research.  *See* Dkt. No. 169-3, p. 15 (Pg. ID 4922) (Billing Entry for Attorney Olszewski).  Every other attorney received less than $650.

Defendant alternatively argues that the Court should implement a ten-percent across-the-board reduction because Plaintiffs' billing entries are too vague to allow for adequate review.  Dkt. No. 172, p. 26 (Pg. ID 4990).  Defendant specifically notes that Attorney Brewer made multiple billing entries for drafting a brief without specifically identifying the document; that Plaintiffs' attorneys'

telephone and email communications do not indicate the subject matter of the discussions; and that Plaintiffs' attorneys lump together several tasks in each billing entry (i.e., block billing), making it impossible to determine how much time was spent on each individual task. *See id.* at pp. 26-29 (Pg. ID 4990-93).

Again, the examples that Defendant cites do not suggest that Plaintiffs' attorneys' fees request is unreasonable. The chronology of this case is quite clear, making it easy to cross-reference any "vague" descriptions in the billing entries with the sequence of events recorded on the Court's docket. For example, the "unidentified" brief that Attorney Brewer worked on between April 2016 and June 2016 corresponds with the dates during which Plaintiffs were litigating their Motion for a Preliminary Injunction. And though Plaintiffs' attorneys do lump together individual tasks within each billing entry, they describe the work performed in a manner that is sufficient to assess the reasonableness of the total hours expended. *See Smith*, 592 Fed. App'x at 371 ("Regarding block-billing, this court has held that so long as the description of the work performed is adequate, block-billing can be sufficient."). Considering the complexity of this case, the Court finds the amount of time Plaintiffs' attorneys devoted to litigating these claims within reason. Accordingly, the Court will not reduce the attorneys' fees award.

## IV. Conclusion

For the reasons stated herein, the Court will GRANT Plaintiffs' Motion for Attorneys' Fees and Costs [# 169] IN PART. Plaintiffs are hereby awarded attorneys' fees and costs in the amount of $530,874.29.

IT IS SO ORDERED.


Dated:  May 31, 2019

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, May 31, 2019, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager